**WO**　　　　　IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BRIAN A.B.,[1] ) | |
| ) | No. 3:23-cv-00070-HRH |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MARTIN J. O'MALLEY,[2] ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| Defendant. ) | |
| _____ ) | |

### O R D E R

This is an action for judicial review of the decision by the Social Security Administration (the "agency") to deny Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434.[3]  Plaintiff has exhausted his administrative remedies and filed a Complaint seeking relief from this Court.  He has timely filed his

---

[1]Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3]Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time.  The regulations governing disability determinations under Title II are located at 20 C.F.R. §§ 404.1501-1599.

Case 3:23-cv-00070-HRH   Document 14   Filed 03/07/24   Page 1 of 22

opening brief, asking the Court to reverse the agency's final decision and remand the case for further administrative proceedings.[4]  The Commissioner filed the Administrative Record as his Answer and timely responded to Plaintiff's opening brief.[5]  Oral argument has not been requested.

<u>Standard of Review</u>

The agency's decision to deny disability insurance benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.  <u>Matney ex rel. Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1200 (9th Cir. 1990)).  "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. of New York v. NLRB</u>, 305 U.S. 197, 229 (1938)).  Such evidence must be "more than a mere scintilla," but may be "less than a preponderance." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.  <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  <u>Gallant v. Heckler</u>, 753 F.2d 1450,

---

[4]Docket No. 10.

[5]Docket No. 7; Docket No. 12.

1453 (9th Cir. 1984) (citing <u>Rhinehart v. Finch</u>, 438 F.2d 920, 921 (9th Cir. 1971)). A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [s]he did not rely." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1010 (9th Cir. 2014). An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted). Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983)), *superseded on other grounds by* 20 C.F.R. §§ 416.929(c)(3) and 404.1529(c)(3); <u>see</u> <u>also</u> <u>Garcia v. Comm'r of Soc. Sec.</u>, 768 F.3d 925, 930 (9th Cir. 2014).

Procedural Background

Plaintiff was 50 years old on his alleged disability onset date and was therefore defined as an individual closely approaching advanced age. He had previously worked as a metal worker, which included welding, sorting, salvaging, and operating heavy equipment.[6] In September of 2020, Plaintiff filed an application for disability insurance benefits under

---

[6]Admin. Rec. 30.

Title II, alleging that he became disabled on December 31, 2016.[7]  Plaintiff subsequently

amended the alleged onset date to June 26, 2013.[8]  Plaintiff alleged in his application that he

is disabled due to emphysema and other unspecified lung problems, high blood pressure,

unspecified heart problems, right and left knee pain, left hand dysfunction, gout, and

anxiety.[9]  He later clarified that his disability includes systemic arthritis, including in his

back, both knees, and both hands, and that he suffers from vision problems and tinnitus that

effect his ability to complete daily activities.[10]  Plaintiff's application was denied, and he

requested an administrative hearing.[11]  After a hearing on January 19, 2022,[12] an administra-

tive law judge (ALJ) denied Plaintiff's application.[13]  Plaintiff sought review by the Appeals

Council, and on February 29, 2023, the Appeals Council denied Plaintiff's request for

review.[14]  Plaintiff timely appealed to this Court.

---

[7]Admin. Rec. 197.

[8]Admin. Rec. 14.

[9]Admin. Rec. 218, 63.

[10]Admin. Rec. 73, 233, 269, 271, 16-17.

[11]Admin. Rec. 68, 79, 92-95.

[12]Admin. Rec. 38-61.

[13]Admin. Rec. 11-32.

[14]Admin. Rec. 1-3.

-4-

## Determining Disability

The Social Security Act provides for the payment of disability insurance benefits to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a). Disability is defined under the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step process for determining disability within the meaning of the Social Security Act.[15] 20 C.F.R. § 404.1520(a)(4). A claimant

---

[15] The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not,

(continued...)

-5-

bears the burden of proof at steps one through four in order to make a prima facie showing of disability. Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting Hoopai v. Astrue, 499 F.3d 1071, 1074-75 (9th Cir. 2007)); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five. Treichler, 775 F.3d at 1096 n.1; Tackett, 180 F.3d at 1098. The agency can meet this burden in two ways : "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." Tackett, 180 F.3d at 1101 (emphasis in original).

---

[15](...continued)
proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

-6-

<u>The ALJ's Decision</u>

The ALJ determined that based on Plaintiff's past employment history, Plaintiff had disability insurance coverage under Title II through December 31, 2016, which is referred to as his "date last insured." He therefore had to establish disability on or before that date in order to be entitled to benefits.[16]

The ALJ then applied the familiar five-step process for determining disability.

At step one, the ALJ found that Plaintiff had "not engage[d] in substantial gainful activity during the period from his amended alleged onset date of June 26, 2013 through his date last insured of December 31, 2016."[17]

At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: "degenerative/arthritic changes of the joint of the lumbar spine, degenerative joint disease or arthritis of multiple joints, and obesity."[18]

At step three, the ALJ found that through the date last insured Plaintiff "did not have an impairment or combination of impairments that meets or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."[19] The ALJ

---

[16]Admin. Rec. 15-16. In order to be entitled to disability insurance benefits, a claimant must establish that he was disabled prior to his last insured date. <u>Armstrong v. Comm'r of Social Sec. Admin.</u>, 160 F.3d 587, 589 (9th Cir. 1998).

[17]Admin. Rec. 16.

[18]<u>Id.</u>

[19]Admin. Rec. 20.

-7-

considered Listings 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root), 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina), 1.18 (Abnormality of a major joint) but found no evidence that Plaintiff's disability met the requirement of these listings.[20]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222–23  (9th Cir. 2009).  The ALJ found that from the amended alleged onset date through the date last insured, Plaintiff had "the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567©," with the exception that he could only "frequently climb ramps, stairs, ladders, ropes, and scaffolds, kneel, and reach with his right upper extremity in all directions within the weight limits specified at the medium exertional level."[21]

In formulating her RFC, the ALJ discounted Plaintiff's allegation that he was unable to work because of chronic and persistent systemic pain.  She concluded that while Plaintiff's impairments could reasonably cause some of the alleged pain and symptoms, his assertion that he was unable to perform any substantial gainful activity based on his chronic ailments was belied by his medical records, treatment history, and behavior during the relevant time period.[22]

---

[20]Id.

[21]Id.

[22]Admin. Rec. 21.

She rejected the December 2021 medical opinion of Plaintiff's current primary care physician, which concluded that Plaintiff should be limited to part-time sedentary work.[23] She rejected this opinion because Plaintiff's relationship with that doctor began after the date last insured, finding it "doubtful that he is the medical professional most able to provide a detailed, longitudinal picture of [Plaintiff's] medical impairments from the amended alleged onset date through the date last insured."[24] She also concluded that the opinion that Plaintiff could only perform sedentary work by the date last insured was not supported by the record, which showed that Plaintiff's degenerative joint issues and arthritis were "mild to moderate at most" with intermittent symptoms and that Plaintiff had not tried surgery to alleviate his pain.[25] She discounted the third-party function statement from Plaintiff's son as unhelpful to her determination because it was describing Plaintiff's condition in 2020, four years past the relevant period of time.[26]

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.[27]

---

[23]Admin. Rec. 1449.

[24]Admin. Rec. 28.

[25]Admin. Rec. 28-29.

[26]Admin. Rec. 29.

[27]Admin. Rec. 30.

At step five, the ALJ found that through the date lasted insured and considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as a dry janitor, hospital cleaner, or machine packager.[28]

Thus, the ALJ concluded that Plaintiff had not been "under a disability, as defined in the Social Security Act, at any time from June 26, 2013, the amended alleged onset date, through December 31, 2016, the date last insured.[29]

Discussion

Plaintiff argues that the ALJ erred by failing to account for the total limiting effects of Plaintiff's arthritis when formulating her RFC. Specifically, he asserts that it was an error to omit from the RFC any work restrictions related to his left shoulder and hand after acknowledging that he suffered from arthritis in multiple joints. He also asserts that the ALJ's finding that he could perform medium-level work is "patently unreasonable" given his well-documented complaints of chronic joint pain and injury. He argues that she erroneously arrived at her RFC without any supporting medical opinion.

RFC Formulation: Left Upper Extremity

The ALJ concluded that through the date last insured Plaintiff suffered from arthritis. She found that this impairment was "severe" within the meaning of the Social Security Act

---

[28]Admin. Rec. 30-31.

[29]Admin. Rec. 31.

-10-

in that it significantly limited his ability to perform basic work activities. Except for the spine, the ALJ did not specify which joints were affected. She instead noted that Plaintiff had "degenerative joint disease or arthritis of multiple joints."[30]

As noted above, the ALJ had to then determine whether Plaintiff had any capacity to work despite these limitations and formulate his RFC based on that determination. She concluded that Plaintiff could still perform medium work— defined as work that requires lifting no more that 50 pounds at a time and frequent lifting or carrying of objects weighing up to 25 pounds[31]—with the added restriction that he could only frequently (one-third to two-thirds of the time) climb and kneel, and only frequently reach with his right upper extremity in all directions within the weight limits specified for medium work.[32]

In justifying this RFC formulation, she looked at Plaintiff's medical records as they relate to each quadrant of Plaintiff's body. As for Plaintiff's upper left quadrant, she noted he had received treatment related to his left elbow, left thumb, and left shoulder and outlined the applicable medical evidence.[33]

---

[30] Admin. Rec. 16.

[31] 20 C.F.R. § 404.1567(c).

[32] Admin. Rec. 20. *See* Social Security Ruling 83-10, 1983 WL 31251, at *6 (1983) (describing what is meant by the term "frequently").

[33] Admin. Rec. 23-24.

-11-

She acknowledged that in 2013 Plaintiff was diagnosed with bursitis of his left elbow. She noted that he was treated with pain medication and a steroid injection. She cited no further records addressing chronic left elbow pain.

As to Plaintiff's left hand, she acknowledged that Plaintiff sought medical attention for his left thumb. He was diagnosed with mild arthritis in his left thumb during the relevant time period. She noted that in 2014 he was treated with pain medication and a steroid injection. She cited records that show Plaintiff sustained an injury to this same thumb in 2015 but that, with casting, the injury improved. She did not cite any records that show additional treatment for left thumb pain.

She also discussed Plaintiff's medical history related to his left shoulder that began in April of 2015. Plaintiff sought medical treatment for left shoulder pain after a fall and presented with a decreased range of motion. She noted that Plaintiff was thereafter diagnosed with osteoarthritis, an impingement, and rotator cuff tendonitis and was treated with injections, pain medication, and physical therapy. She noted that by December of 2015 x-rays of his left shoulder were normal and that he showed full motor strength but that a few months later he sought reevaluation of his left shoulder based on continued pain. A subsequent MRI showed a tear and moderate degenerative joint disease. She noted that his treating doctor recommended surgery. Later in her decision, she cited a treatment note from June of 2016 where Plaintiff's left shoulder showed continued improvement. She noted that Plaintiff never had the surgery. She acknowledged that while Plaintiff still complained about

-12-

his left shoulder a few times in 2017, he demonstrated full range of motion. This evidence led her to conclude that while he had experienced pain and decreased range of motion with regard to that shoulder, he was showing improvement by the date last insured.

The ALJ's omission of any specific work limitation related to his upper left extremity is adequately supported by the record. The record confirms that an MRI showed a tear and some joint degeneration of his left shoulder and that his treating physician's recommendation was that Plaintiff undergo surgery.[34] By the next month, however, the physician noted that his shoulder movement was "vastly improved" and doing better.[35] The following month, July of 2016, Plaintiff's chief complaint to his primary care physician had become his right knee, with no mention of his left shoulder.[36] Plaintiff never underwent surgery for his shoulder. Moreover, while Plaintiff seeks disability benefits based on generalized chronic arthritis, he did not specifically indicate in his application that he continues to suffer from debilitating pain and limited range of motion in his left shoulder.[37] He in fact confirmed during his

---

[34]Admin. Rec. 723, 1498.

[35] Admin. Rec. 726.

[36] Admin. Rec. 728. Indeed, medical records beginning in July of 2016 show that he began seeking care at a different medical facility and his primary reason for seeking medical care there was knee pain. Admin. Rec. 1071-83.

[37]Admin. Rec. 218, 233.

hearing that he has full range of motion, as was documented by his treating physician shortly after the date last insured.[38]

The ALJ did not ignore or reject any medical evidence that would require some additional work limitation due to pain in his left thumb. As noted by the ALJ, he suffered subluxation of his left thumb in 2012 and again in 2015.[39] His treating physician noted improvement after it had been casted.[40] He was also diagnosed with localized arthritis in the MCP joint of his left thumb in 2014 and received a steroid injection and pain medicine.[41] Apart from a few appointments in 2016 where he mentioned pain in his left thumb, there are no further records within the relevant time period discussing ongoing treatment of Plaintiff's left thumb. Plaintiff did not consistently seek or receive treatment due to his arthritic thumb.

Plaintiff's challenge to the ALJ's decision based on a perceived inconsistency between the ALJ's listing of arthritis as a severe limitation in Step 2 and her subsequent omission of any left-side restriction in the RFC is unavailing. The ALJ did not specifically find that Plaintiff's left shoulder or hand had impairments that were in and of themselves severely limiting. Regardless, her omission of any specific work limitation is not a legal error warranting remand. There is simply no requirement that each identified severe impairment

---

[38] Admin. Rec. 48 ("I'm able to lift my arm above my head now, but I really can't bear any weight on it."); Admin. Rec. 364, 1183 (noting full left shoulder range of motion).

[39] Admin. Rec. 23.

[40] Admin. Rec. 700.

[41] Admin. Rec. 664-66.

-14-

must correspond to limitations on a claimant's ability to perform basic work activities. <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1228-29 (9th Cir. 2009).

<u>RFC Formulation: Moderate Work</u>

Plaintiff also contends that the ALJ's denial should be reversed and remanded because her conclusion that he was able to perform medium work is "patently unreasonable."[42] He asserts that his reported inability to undertake substantial gainful activity, let alone medium-level work, is supported by his well-documented history of seeking medical care for chronic pain and that the ALJ's RFC formulation is per se unreasonable because it is not based on any medical opinion.

In finding that Plaintiff was able to perform medium-level work during the relevant 2013-2016 time period, the ALJ undertook a full and thorough review of Plaintiff's medical history, particularly as it relates to his joint injuries and arthritis. After doing so, she concluded that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent [with the record]."[43] In doing so, the ALJ discounted Plaintiff's testimony that during the relevant period of time he was unable to walk more than 100 yards, hold heavy objects, use his

---

[42]Docket No. 10 at 13.

[43]Admin. Rec. 21.

-15-

fingers, bend down, reach over his head, or lift any object weighing more than 10 pounds, and that he was generally "bedridden."[44]

In order to discount a claimant's testimony regarding the severity of his symptoms, as was done here, an ALJ must provide "specific, clear and convincing reasons for doing so." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014). Here, the ALJ provided three reasons: 1) Plaintiff's failure to follow through on prescribed treatments and his drug-seeking behavior; 2) his history of taking care of his ailing mother during the relevant time period; and 3) the objective medical evidence and his clinical presentation, as well as the inconsistency with which he reported his symptoms and limitations at his various appointments.

The ALJ found that "[d]espite the reported significant pain and other symptoms," Plaintiff did not fully comply with recommended treatments that could have improved his condition and that this noncompliance "suggests that his symptoms might not have been as serious as alleged from [the onset date] through the date last insured."[45] A claimant's unexplained failure to follow through on a recommended treatment or follow a prescribed course of treatment can support an ALJ's decision to discount a claimant's alleged level of pain. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). Here, the record supports the ALJ's conclusion that Plaintiff did not follow the prescribed course of treatment. When

[44]Admin. Rec. 44-49.

[45]Admin. Rec. 26.

-16-

Plaintiff asked his treating physician for a refill of pain medication, he also tested positive for unprescribed narcotics.[46] The physician noted that Plaintiff "claim[ed] to be taking oxycodone from some 'old' supply," but noted that he should not have had access to an older supply given his previous agreement regarding pain medication.[47] The record shows that Plaintiff failed to undergo two recommended surgeries; one for his left shoulder and the other for his right knee.[48] The knee surgery had to be cancelled after Plaintiff exhibited bizarre behavior consistent with a benzodiazepine overdose.[49] The treating physician concluded that he could not "trust [Plaintiff] to take his medications as directed."[50] He also failed to bring in his prescribed medications for review as requested by the physician.[51] Given this record, the ALJ reasonably concluded that Plaintiff's unwillingness to comply with his medication plan interfered with his treatment and prolonged his joint-related pain.

---

[46]Admin. Rec. 684.

[47]Id.

[48]Admin. Rec. 723-24, 728 (the doctor's notes from May of 2016 show that the treatment plan was for Plaintiff to undergo left shoulder surgery but there are no corresponding records to show that the surgery occurred and by July of 2016 the doctor's notes show that his chief complaint had switched to his right knee); Admin. Rec. 737.

[49]Admin. Rec. 737.

[50]Id.

[51]Id.

Relatedly, the ALJ found that the record was "replete with evidence of drug seeking behavior" that undermined Plaintiff's complaints of chronic pain.[52] Substantial evidence of drug-seeking provides a valid reason for discounting a claimant's allegations of disabling pain. Coleman v. Saul, 979 F.3d 751, 756 (9th Cir. 2020) (noting that evidence of drug-seeking behavior rationally supports a finding that complaints of pain were exaggerated). In 2014 and 2015, one of Plaintiff's treating physician noted that he had a history of narcotic dependence and drug-seeking behavior.[53] Plaintiff complained of "chronic arthritis" with no "particular pain" just generalized pain "from [his] toes to [his] fingertips" and sought a refill for his oxycodone prescription.[54] The physician noted that he would not "be prescribing additional narcotics for [Plaintiff]."[55] In November 2016, Plaintiff's long-time primary care physician informed Plaintiff that he would not prescribe any more scheduled drugs given Plaintiff's failed pill count.[56] The record shows that Plaintiff subsequently stopped seeing that physician.[57] Given evidence that Plaintiff sought and misused pain medication, the

---

[52]Admin. Rec. 27.

[53]Admin. Rec. 683, 700.

[54]Admin. Rec. 685.

[55]Admin. Rec. 702.

[56]Admin. Rec. 738.

[57]Admin. Rec. 1071.

-18-

ALJ's finding that Plaintiff's complaints of pain were exaggerated is at least a rational interpretation of the evidence.

The ALJ also discounted Plaintiff's allegations of disabling pain based on the fact that he was the primary care-giver for his aging mother during the relevant time period.[58] She found that not only did the record show that Plaintiff performed constant care for his mother at the same time he claimed disabling chronic pain, it also showed that he stopped working in order to care for her and not because of any particular disability. Both reasons provide sufficient basis for discounting a claimant's testimony. Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001); Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012).

The record provides substantial support for her conclusion. It appears that prior to the onset date of his disability, Plaintiff had been working and providing full-time care for his aging mother, who had dementia.[59] A few months later, Plaintiff reported that he had leased out his business and was providing constant care for his mother as she "continued to deteriorate."[60] Later, he again stated that he had lost his business to take care of his mother full time.[61] These reports call into question his assertion that he had to quit working because of his pain. The record also shows that his care-taking responsibilities during the relevant

---

[58]Admin. Rec. 26-27.

[59]Admin. Rec. 644.

[60]Admin. Rec. 650.

[61]Admin. Rec. 688.

-19-

period of time were significant.[62]  He brought his mother to an appointment because he could not find someone to watch her, which suggests that she needed constant, not just sporadic, care.[63]  At another appointment right after the date last insured, Plaintiff reported that he had to help his mother up the stairs.[64]  Based on this evidence, the ALJ rationally concluded that Plaintiff's care for his mother involved sustained work and some ability to function and thereby contradicted his assertion that he was primarily bedridden from 2013 to 2016.

The ALJ also concluded that the objective medical evidence showed mostly mild to moderate degenerative joint changes.[65]  She documented the evidence in support of this conclusion and noted that Plaintiff's reported symptoms and limitations caused by these mild changes "waxed and waned."[66]  He would present with one complaint and then show improvement and switch to a different complaint.  She concluded that Plaintiff's clinical presentations did not suggest he was someone with severe and debilitating pain, noting that he was generally described by his treating physicians as showing no acute distress.[67]  She

---

[62]Admin. Rec. 1071, 391, 1150.

[63]Admin. Rec. 320.

[64]Admin. Rec. 1068, 1073.

[65]Admin. Rec. 25-26.

[66]Admin. Rec. 26, 28.

[67]Admin. Rec. 25.

documented how the clinical notes generally showed normal musculoskeletal function and that any observable symptoms were inconsistent.[68]

In total, these reasons provide clear and convincing reasons to reject Plaintiff's testimony regarding the severity of his symptoms.

Indeed, Plaintiff does not specifically challenge the ALJ's rejection of his reported symptoms but rather more generally argues that the ALJ's subsequent RFC formulation is unreasonable and not based on any supporting medical opinion. The court disagrees.

There is no requirement that the RFC be based on a specific medical opinion, as long as the resulting formulation is supported by substantial evidence. Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."); Gloria S. v. Comm'r Soc. Sec., No. C20-86-RSM, 2020 WL 4734340, at *1 (W.D. Wash., Aug. 14, 2020) (noting that "there is no requirement to base the RFC on one or more medical opinions"); Rivera v. Berryhill, No. ED CV 16-791-SP, 2017 WL 5054656, at *5 (C.D. Cal. Oct. 31, 2017) ("The absence of a medical opinion is not necessary fatal, but the RFC determination still must be supported by substantial evidence."). The same evidence that raised doubts as to Plaintiff's reported limitations support the ALJ's determination that Plaintiff was able to perform medium-level work during the relevant time period. He functioned as his mother's primary caretaker; the objective medical evidence

---

[68]Id.

showed only mild to moderate degeneration and symptoms that waxed and waned with inconsistent treatment; and his clinical presentations did not show any consistent musculoskeletal limitation or chronic distress.  Consequently, the ALJ's decision that Plaintiff, while somewhat limited by various joint issues, was still able to perform moderate-level work during the relevant time period is, at a minimum, a rational interpretation of the evidence.

<u>Conclusion</u>

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are free from legal error and are supported by substantial evidence in the record.  Accordingly, IT IS HEREBY ORDERED:

1.    Plaintiff's request for relief at Docket 10 is DENIED.

2.    The Commissioner's final decision is AFFIRMED.

3.    The Clerk of this Court shall enter judgment dismissing Plaintiff's case with prejudice.

DATED at Anchorage, Alaska, this 7th day of March, 2023.

/s/ H. Russel Holland
United States District Judge

-22-